COMPUTER ACCESS TECHNOLOGY
CORPORATION, Plaintiff,

v.

CATALYST ENTERPRISES,
INC., Defendant.

No. C–00–4852–DLJ.

United States District Court,
N.D. California.

Feb. 13, 2003.

See also 2001 WL 34118030.

Sue J. Nam, Clark T. Thiel, Brobeck Phleger & Harrison LLP, Carla B. Oakley, Morgan Lewis & Bockius, LLP, Scott Bonagofsky, Morgan Lewis & Bockius LLP, San Francisco, CA, for Computer Access Technology Corporation, Plaintiff.

John C. Baum, William T. Gallagher, Townsend & Townsend & Crew LLP, San Francisco, CA, for Catalyst Enterprises, Defendant.

## ORDER

JENSEN, District Judge.

On January 10, 2003, the Court heard argument on defendant Catalyst Enterprises's motion for a new trial or, in the alternative, renewed motion for judgement as a matter of law. Carla B. Oakley and Scott Bonagofsky appeared on behalf of Computer Access Technology Corporation; William Gallagher, Paul Kirsch, Marc Gorelnik and K.T. Cherian appeared for Catalyst Enterprises. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS Catalyst Enterprises motion for a new trial for the trademark, willfulness and unfair competition under federal and state law. The Court also grants a new trial for the trade dress and copyright claim.

# I. BACKGROUND

### A. *Factual Background and Procedural History*

#### 1. *Factual Background*

Plaintiff Computer Access Technology Corporation ("CATC") and Defendant Catalyst Enterprises, Inc. ("Catalyst") both sell products that enable developers of devices and communication channels to test and analyze the compatibility of the computer and of their respective products with a specific communication channel. Such products are known as protocol analyzers. The instant case arises from CATC's allegation that the graphical user interface ("GUI") of Catalyst's Serial Bus Analyzer Exerciser 20 ("SBAE–20") infringes on CATC's trademark, trade dress, and copyright rights in the GUI of its analyzers. CATC calls the GUI of its analyzers the CATC Trace data display design ("CATC design"). For a detailed description of the factual background, the parties are referred to this Court's June 13, 2001 Order in *Computer Access Technology v. Catalyst Enterprises,* C 00–4852–DLJ.

#### 2. *Procedural History*

On December 29, 2000, CATC filed this action alleging that Catalyst copied the CATC design. The case was assigned to this Court on January 11, 2001.

On March 26, 2001, CATC filed its First Amended Complaint accusing Catalyst of trademark and trade dress infringement, copyright infringement, and unfair competition under federal and state law.

On March 28, CATC moved for a preliminary injunction to enjoin Catalyst from infringement of CATC's trademark, trade dress, and copyright in the graphical interface of CATC's USB analyzer. The Court denied CATC's motion for a preliminary injunction on June 13, 2001.

On December 11, 2002, Catalyst filed a motion for summary judgment. On January 25, 2002, CATC filed a motion for judgment on the pleadings and motion to strike.

On March 29, 2002, the Court issued an Order denying Catalyst's motion for partial summary judgment and granting CATC's motion for judgment on the pleadings with respect to all three of Catalyst's counterclaims for unfair competition under federal and state law and bad faith prosecution under state law.

On October 28, 2002, a jury trial began. On November 15, 2002, the jury reached a unanimous verdict. The jury found in favor of CATC on the trademark infringement, willfulness and unfair competition under state and federal law claims. The jury found in favor of Catalyst on the trade dress and copyright infringement claims. The jury awarded actual damages in the amount of $612,000. It also awarded lost profits in the amount of $1,200,000. The lost profit amount was based upon findings of the jury that Catalyst earned $1,700,000 in gross revenue, and that the gross revenue amount should be reduced by $250,000 for Catalyst's expenses incurred in making those sales and of $250,000 for the amount of sales caused by other factors.

### B. *Legal Standard*

#### 1. *Motion for a New Trial*

Under the Federal Rules, the court may grant a new trial for any reason which suggests that the jury's verdict was clearly wrong or was a miscarriage of justice. *See Fed.R.Civ.P. 59(a).* The primary basis for granting a new trial is that the jury's verdict was against the clear weight of the evidence. *See Landes Constr. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir.1987). In order to find that a verdict was against the clear weight of the evidence, the court must more than simply disagree with the

jury's decision, although it need not find that there is no evidence in support of the verdict. *See id.* The court may weigh the evidence, assess the credibility of witnesses, and need not view the evidence in the light most favorable to the prevailing party. *See id.* A new trial should be ordered if the court has a firm conviction that the jury made an error which led to a miscarriage of justice. *See id.* at 1371–72 (quoting 11 Charles Wright & Arthur Miller, Federal Practice and Procedure, Civil 2806, at 48–49 (West 1973)).

### 2. *Renewed Judgement as A Matter of Law*

Federal Rule of Civil Procedure 50(a) provides the basis for an attack on the sufficiency of the evidence to support a jury's finding. It states:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Rule 50(b), which provides for renewing a judgment as a matter of law, states:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion....59. In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law.

■■■ Motions for judgment as a matter of law in jury trials are governed under the same standard as summary judgment motions, albeit at a later stage of the proceeding. *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 772 (9th Cir.1981). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1203 (9th Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998); *Fed.R.Civ.P. 50(b).* The Court must determine whether there is relevant evidence sufficient to permit reasonable minds to reach the jury's verdict. *See Landes Constr.,* 833 F.2d at 1371 (*citing St. Elizabeth Community Hospital v. Heckler,* 745 F.2d 587, 592 (9th Cir.1984)). In making this determination, the court may not weigh evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury on any specific factual issue merely because it believes its judgment to be more reasonable. *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 631 (Fed.Cir.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Wetmore v. Gardner,* 735 F.Supp. 974, 977–78 (E.D.Wash.1990); *Modine Mfg. Co. v. Allen Group, Inc.,* 1989 WL 205782, 14 U.S.P.Q.2d 1210, 1212 (N.D.Cal. 1989), *affirmed,* 917 F.2d 538 (C.A.Fed. 1990), *cert. denied,* 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991); 9 Charles Wright & Arthur Miller, *Federal Practice and Procedure,* § 2524, at 543–44 (West 1971 & Supp.1991).

If the court has granted a post-trial motion for judgment as a matter of law, Federal Rule of Civil Procedure 50(c)(1) requires the court to conditionally rule on a motion for a new trial.

## II. DISCUSSION

Catalyst argues that the Court should grant its motion for a new trial, or in the alternative, its renewed motion for judgment as a matter of law ("JMOL"). More specifically, Catalyst argues the Court should grant its motion for a new trial because the jury's verdict of trademark infringement is clearly contrary to the jury's findings that the CATC design is functional and that Catalyst's design did not infringe any CATC copyright. Moreover, Catalyst argues the jury's verdict of infringement is clearly contrary to the evidence. Catalyst argues the Court should grant its motion for a renewed JMOL for the trademark claim because CATC failed to produce substantial evidence of the fact or amount of damages resulting from its alleged trademark infringement, or substantial evidence of secondary meaning or a likelihood of confusion. Catalyst also argues that the Court should grant its motion for a renewed JMOL for the willfulness and unfair competition claims under both federal and state law. Each of these issues are addressed in turn.

### A. *Motion for New Trial on the Trademark Verdict*

Catalyst argues that the Court should grant its motion for a new trial because the jury's verdict of trademark infringement is inconsistent with the jury's findings that the CATC design is functional and contrary to law in this Circuit. Moreover, Catalyst argues that CATC failed to produce any substantial evidence at trial to support the fact or amount of damages for trademark infringement.

1. The Court instructed the jury that the definition of trade dress is, in part: "Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates the product's source and distinguishes it from the products of others.

The Court finds that the jury verdicts cannot be reconciled with the law in this Circuit and thus a new trial is appropriate. The only reasonable interpretation of the jury verdicts is that the jury decided that the CATC design is functional. It is a miscarriage of justice to extend trademark protection to the functional design at issue in this case. Moreover, a new trial is necessary because CATC failed to produce substantial evidence at trial as to the fact or amount of trademark damages.

### 1. *Jury Findings and the Functionality Requirement*

■ The Court finds that the trademark verdict cannot stand because the jury necessarily found that the CATC design is functional, and trademark protection does not extend to such a functional design. Each of the two steps in this analysis is analyzed in turn.

### a. *The Jury Found the CATC Design Functional*

Catalyst argues the jury necessarily found the CATC design functional because the jury found CATC did not have a valid, protectable trade dress, but did have a valid, protectable trademark.

CATC argues that the Court should rule that the jury found the CATC design non-functional. It points to how the jury instructions on page 22 provided it with a definition of the term trade dress.[1] Based on this instruction, CATC argues that the jury may have never considered whether CATC's design was functional because it concluded that the design did not satisfy

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display..." Jury Instructions, page 22.

the trade dress definition. It argues that the jury may not have found it to be within the definition because the CATC design was not visible on the analyzer itself, is not on the packaging of the box or, "unlike the shape of a VW beetle, is not the 'physical detail and design of a product.'" Plaintiff's Opposition, page 4.

CATC argues that the copyright jury instructions and the jury finding that the CATC design is entitled to copyright protection confirms that the jury found the design is nonfunctional. The jury was instructed that "copyright protection does not extend to the functional aspects of a work." Jury Instructions, page 33. In addition, CATC points to how the jury was told, in response to a question, that the same definition of functionality applies to both copyright and trade dress. T.Tr. at 2069:12–2074:4.

■ This Court is bound to find the special verdicts of juries consistent, if it can do so under a fair reading of them. *Toner for Toner v. Lederle Laboratories, a Div. of American Cyanamid Co.,* 828 F.2d 510, 514 (9th Cir.1987). Based on the jury instructions and verdicts reached in this case, the Court finds that the only fair reading of the verdicts is that the jury found that the CATC design is functional.

The jury had been instructed that proof of trademark infringement required the following elements: (1) the CATC design is a valid, protectable trademark; (2) CATC owns the CATC design as a trademark; (3) Catalyst used a mark similar to the CATC design on its SBAE–20 product without the consent of CATC in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods; and (4) CATC was harmed by Catalyst's infringement. The jury was further instructed that "[a] valid trademark is a symbol drawing, design or combination thereof that is: Distinctive because it has acquired a secondary meaning." The jury

was also told that the parties stipulated to ownership. The jury found that CATC had a valid, protectable trademark. Based on the instructions, this means the jury found that: (a) the CATC design acquired secondary meaning; (b) there was a likelihood of confusion; and (c) damages.

Next, the jury decided that there was no protectable trade dress. The jury had been instructed that proof of trade dress infringement required the following elements: (1) the CATC design is a valid, protectable trade dress; (2) CATC owns the CATC design as a trade dress; (3) Catalyst used a mark similar to the CATC design on its SBAE–20 product without the consent of CATC in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods; and (4) CATC was harmed by Catalyst's infringement. The jury was further instructed that "[a] valid trade dress is the physical detail and design of a product that: 1. Has acquired secondary meaning; and 2. Is non-functional." The jury was also told that the parties stipulated to ownership.

There were three ways that the jury could find there was no protectable trade dress: (1) by finding the CATC design did not have secondary meaning; (2) by finding the CATC design was functional; or, (3) by finding both. In order to read this verdict consistently with the trademark verdict, the jury must have found that the CATC design has secondary meaning. Given this reading, the only possible reason the jury could have found that there was no valid, protectable trade dress was because it found the CATC design to be functional.

CATC's argument that the jury may never have considered whether or not the design was functional because it found the design did not fit into the definition of trade dress is unreasonable. The first line

in the trade dress definition instruction states: "Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates the product's source and distinguishes it from the products of others."[2] The following paragraphs then further elaborate on this general statement. If the jury followed the instruction, they were forced to consider the issue of functionality. The only way for the jury to fail to reach that issue would be to unreasonably ignore the whole instruction except for the second paragraph, which modifies the first paragraph, and then decide that the second paragraph's description was not met. The jury had been instructed to follow all the instructions and not single out some and ignore others. The Court will not assume such unreasonable behavior on the part of the jury.

The jury finding that the CATC design is functional is consistent with the copyright verdict. The jury had been instructed that proof of copyright infringement required the following elements: "1. CATC is the owner of a valid copyright; and 2. Catalyst copied original elements from the copyrighted work." The jury was instructed that the burden on the issue of ownership of a valid copyright had shifted to Catalyst because CATC introduced a certificate of a copyright registration for one of its products containing the CATC design GUI. The verdict form required the jury to decide whether or not Catalyst had proven that the CATC copyright was not valid. The jury found that Catalyst failed to carry its burden of proof. The plain meaning of the verdict on copyright is that the jury found that Catalyst did not present sufficient evidence to prove that CATC did not own the copyright and that the copyright was not original.[3] Based on the jury finding, the copyright is valid, however, the further verdict of the jury found that Catalyst did not infringe CATC's copyright. To decide whether there was infringement, the jury was told:

> If you find CATC has a valid copyright, you must also decide whether CATC proved by a preponderance of the evidence that the look and feel of Catalyst's SBAE–20 display design is virtually identical to the copyrighted CATC display design.

2. The whole instruction is: "Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A trade dress is non-functional if, taken as a whole, the combination of trade dress features is not essential to the product's use or purpose or does not affect the cost or quality of the product even though certain particular features of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product. In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

A person who uses the trade dress of another may be liable for damages." Jury Instructions, page 22.

3. The jury was instructed: "An original work may include or incorporate elements taken from prior works or works from the public domain. The original parts of the CATC Trace Design are the parts created:

1. Independently by CATC, that is, CATC did not copy it from another work; and
2. By use of at least some minimal creativity.

In copyright law, the "original element" of a work may not necessarily be new or novel." Jury Instructions, page 31.

Works are virtually identical if: 1. the ideas in CATC's copyrighted work and in Catalyst's work are virtually identical; and 2. the expression of ideas in the CATC design and the expression of ideas in Catalyst's SBAE–20 are virtually identical.

The test for expression of ideas is whether an ordinary reasonable person would find the total look and feel, in other words the general design of the data display screens and the manner in which information is presented to the user, to be virtually identical. . . . *Copyright protection does not extend to the functional aspects of a work.* Where the infringing work is partly artistic and partly functional *you are not to consider functional features in deciding whether or not the work is virtually identical* to the copyrighted display design. (emphasis added)

Jury Instruction, pages 31–33. Thus, based on the instruction, the jury ignored all functional features of the design when deciding the issue of infringement. After disregarding all functional features, the jury found that there was either nothing left to infringe, or that the non-functional features left were not virtually identical to Catalyst's display design. Either scenario is consistent with a finding of functionality with respect to the trade dress claim.

In sum, the Court is convinced that the jury necessarily found the CATC design to be functional. This is the only fair reading of the jury verdicts as to the trademark, trade dress and copyright verdicts which maintains their consistency. As such, the issue now becomes: Is the functional design at issue in this case protectable under trademark law? The Court finds that under Ninth Circuit law, the answer to this question is no.

b. *Trademark Protection Does Not Extend to Functional Designs*

■ Catalyst argues that because the jury found the CATC design functional, the trademark jury verdict must be set aside. It argues that trademark protection does not extend to functional features. It argues how trademark protection of such a functional design would burden fair competition. Moreover, it argues that it is inequitable to protect a functional design under trademark law when the exact same functional design, used in the exact same manner, is not afforded trade dress protection. In other words, an identical product cannot be lawful under trademark law but unlawful under trade dress law.

The Court did not instruct the jury that an element of trademark is non-functionality. The Court instructed the jury that non-functionality is an element of trade dress. These instructions are consistent with the Ninth Circuit Model Jury Instructions for trademark and trade dress. *See* Model Instruction 18.0—18.10. Nonetheless, the Court finds that case law clearly requires a design to be non-functional in order for it to receive trademark protection. As argued by Catalyst, the same functional design that the jury found unprotectable under trade dress law cannot be afforded trademark protection.

The Supreme Court holds that functional features are not afforded trademark protection. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) ("[t]rademark or trade dress protection extends only to product features that are nonfunctional"); *see also Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 119–20, 59 S.Ct. 109, 83 L.Ed. 73 (1938). The Ninth Circuit has consistently reaffirmed that trademark protection does not extend to functional designs. *See e.g., Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006

(9th Cir.1998); *International Olympic Committee v. San Francisco Arts & Athletics,* 789 F.2d 1319, 1322 n. 1 (9th Cir. 1986), *amended by* 789 F.2d 1319 (9th Cir.1986), *aff'd sub nom,* 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) ("Similarly, there cannot be a trademark in a purely functional device"). In this case, the fair reading of the jury verdicts is that the jury found the CATC design to be functional. As a result, it is contrary to Supreme Court and Ninth Circuit law to afford trademark protection to the CATC design.

■ The Court also agrees with Catalyst that protection of a functional design under trademark law, when the exact same functional design, used in the exact same manner, is unprotectable under trade dress law would be a miscarriage of justice. Trade dress protection is considered to be broader than trademark protection. *See International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819 (9th Cir. 1993) ("...the scope of trade dress has been said to exceed that of trademark..."). Accordingly, while it is possible to foresee a situation where a design is extended trademark protection but not trade dress protection, the opposite is not true. It would be inconsistent to extend protection under a lesser inclusive category, while denying protection under the more inclusive.

The difference in result under trademark and trade dress law for this functional design is also inequitable because "the analysis for trade dress and an unregistered trademark under section 43(a) of the Lanham Act is very similar." *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819 (9th Cir.1993); *See also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (section 43(a) "provides no basis for distinguishing between trademark and trade dress"); *Rachel v. Banana Republic, Inc.,*

831 F.2d 1503, 1506 (9th Cir.1987) (section 43(a) provides unregistered trademark in product's trade dress). "To state an infringement claim under § 43(a)—whether it be a trademark claim or a trade dress claim—a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion." *Kendall–Jackson Winery, Ltd. v. E. & J, Gallo Winery,* 150 F.3d 1042–47 (9th Cir. 1998); *see also Two Pesos,* 505 U.S. at 769–70, 112 S.Ct. at 2758; *HWE Inc. v. JB Research, Inc.,* 993 F.2d 694, 696 (9th Cir. 1993); *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1381 (9th Cir.1987). Thus, for trademark protection, the Ninth Circuit requires a design to be non-functional. However, the jury in this case found the design to be functional. Extending trademark protection therefore is inequitable.

In addition, the Court agrees with Catalyst that extending trademark protection in this case interferes with and inhibits free competition. As discussed by the Supreme Court in *Qualitex Co. v. Jacobson Prods. Co.,* extending trademark protection to functional features puts competitors at a serious disadvantage and interferes with free competition. *Id.* As explained by the Court,

The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, *35 U.S.C. §§ 154, 173,* after which competitors are free to use the innovation. *If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained* without regard to whether they qualify as patents and

could be extended forever (because trademarks may be renewed in perpetuity). *See Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 119–120, 59 S.Ct. 109, 113–114, 83 L.Ed. 73 (1938) (Brandeis, J.); *Inwood Laboratories, Inc., supra,* 456 U.S. at 863, 102 S.Ct. at 2193 (White, J., concurring in result) ...Functionality doctrine therefore would require, to take an imaginary example, that even if customers have come to identify the special illumination-enhancing shape of a new patented light bulb with a particular manufacturer, the manufacturer may not use that shape as a trademark, for doing so, after the patent had expired, would impede competition—not by protecting the reputation of the original bulb maker, but by frustrating competitors' legitimate efforts to produce an equivalent illumination-enhancing bulb. *See e.g., Kellogg Co., supra,* 305 U.S. at 119–120, 59 S.Ct. at 113–114. This Court consequently has explained that "[i]n general terms, a product feature is functional," and cannot serve as a trademark, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article," that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage. *Inwood Laboratories, Inc., supra,* 456 U.S. at 850 n. 10, 102 S.Ct. at 2186 n. 10.

In this case, trademark protection would prohibit Catalyst and other competitors from using the functional design in competing protocol analyzer displays or in collateral marketing material. Such protection would essentially constitute a grant of a perpetual monopoly over features that could not be patented. *See e.g., Qualitex,* 514 U.S. at 164–165, 115 S.Ct. 1300; *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1530 (9th Cir.1992); *International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 918–19 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). Here again, extending trademark protection for the CATC design would be inequitable.

It is important to note that there are some functional features that may be protected by trademark law. As the Ninth Circuit explained in *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 785 (2002): "[a]lthough the Lanham Act prohibits registration of a mark that 'comprises any matter that, as a whole, is functional,' *15 U.S.C. § 1052(e)(5),* ...not all aspects of functionality are precluded from protection. De jure, or legal, functionality must be distinguished from de facto functionality which still may support trademark protection." The Ninth Circuit then went on to explain the difference between de jure and de facto functionality. It stated how "[d]e jure functionality ... means that the product is in its particular shape because it works better in this shape.... [B]efore an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or non de jure functional." *Id. quoting Textron, Inc. v. U.S. Int'l Trade Comm'n,* 753 F.2d 1019, 1025 (Fed. Cir.1985) (quoted in *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,* 199 F.3d 1009, 1012 (9th Cir.1999)). The Ninth Circuit then gave as an example how even though a bottle is a de facto functional holder of liquid, the bottle's configuration may still qualify for trademark protection if its physical details are *nonfunctional* and have acquired secondary meaning. *Id.* (emphasis added); *see also, In re Morton–Norwich Prods., Inc.,* 671 F.2d 1332 (Cust. & Pat.App.1982) (holding that configuration of "Glass Plus" spray-bottle warranted trademark protection). However, while the *Tie Tech* case recognizes the possibility of trademark protection for certain functional features, this does not change the result in this case. Here, the jury found that the CATC design is de jure functional. It was instruct-

ed that "[a] product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality." Jury Instruction, page 24. De jure functional designs are not entitled to trademark protection.

CATC's reliance on *Vision Sports* for the proposition that functionality is required for designs used as a trade dress, but not a trademark, is not persuasive. In *Vision Sports,* the defendant argued, in the context of preliminary injunctive relief, that the case was not a trademark case, but only a trade dress case. The Ninth Circuit stated how evaluation of its argument required a brief analysis of the distinction between trademark and trade dress claims, and went on to discuss the differing definitions of the two and how trade dress protection is broader. The Court then concluded that the plaintiff asserted both trademark and trade dress interests. *Id.* at 612–613. The Court then analyzed the plaintiff's trade dress claim in detail, including a discussion of the functionality requirement. *Id.* at 612–616. For the trademark claim, it summarily affirmed the district court decision that the plaintiff was likely to succeed on the merits. *Id.* at 616. However, the fact that it did not explicitly analyze the trademark claim and discuss the functionality requirement does not mean that the Ninth Circuit allows trademark protection for a functional design.

CATC further argues that the fact its trademark is derived from its data display does not necessarily prevent it from being protected as a trademark. It cites to *Vision Sports* in support of this argument.[4]

*Vision Sports,* 888 F.2d at 613. It also cites to a decision of the Court of Customs and Patent appeals where the Court held, in part, that comic book character drawings were not descriptive of toy dolls to the extent that they were incapable of functioning as a trademarks for the dolls.[5] *In re. DC Comics, Inc.,* 689 F.2d 1042, (Cust. & Pat.App.1982).

The Court agrees with CATC that the fact its trademark is derived from its data display does not necessarily prevent it from being protected as a trademark. However, it does not follow that CATC is entitled to trademark protection in this case. Neither of the two cases cited provide support for protection of a functional design. Moreover, neither of the two cases cited provide support for protection of a design as a trademark, even though the same use of the same functional design is unprotectable as a trade dress.

Finally, CATC argues that it should be able to prevent all uses by Catalyst of the CATC design, even if the jury denied trade dress protection. CATC argues that because consumers cannot be expected to understand what constitutes trademark use as opposed to trade dress use, Catalyst should be prohibited from all uses of CATC's trademark. CATC cites to the following Ninth Circuit cases where the Court crafted broad injunctive relief for trademark infringement in support of its argument: *Levi Strauss v. Blue Bell,* Inc. 632 F.2d 817 (9th Cir.1980);*Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036 (1999); and *Dr. Seuss Enterprises v. Penguin Books USA,* 109 F.3d 1394 (9th Cir.1997).[6]

4. In *Vision Sports,* the Court issued a preliminary injunction based on plaintiff's trademark and trade dress claim for its "VISION STREET WEAR" logo and related logo design ("VSW logo"). *Vision Sports,* 888 F.2d at 613.

5. In *DC Comics,* the Court reversed a decision of the Customs and Patent Board that drawings of fictitious comic book characters were "utilitarian" or functional and thus unprotectable under trademark law. *Id.* at 1045.

6. In *Levi Strauss,* the Ninth Circuit affirmed the district court's ruling that the defendant

In the cases cited to by CATC, the Ninth Circuit did craft broad injunctions to prevent trademark infringement. However, CATC's reliance on the Ninth Circuit cases for the idea that Catalyst must be prevented from all uses of the design sweeps too broadly and is inappropriate given the facts in this case. In this case, CATC seeks trademark protection for a functional design. CATC also seeks trademark protection for a functional design, when the same design used in the same manner, was denied trade dress protection. None of the fact situations in the cases cited to are similar to the facts in this case. None of the cases cited to extend protection for functional designs. And, none of the cases cited to extend protection to a functional design, which when used in the same manner, is denied trade dress protection.

 In sum, the Court finds that CATC can not protect the CATC design as a trademark, when the same design used in the same manner is denied trade dress protection. Such a result is inconsistent with law in this Circuit, inequitable and a miscarriage of justice.

### 2. *Sufficiency of the Evidence*

In addition to the fact that trademark protection cannot extend to this functional design, the Court finds CATC did not offer sufficient evidence at trial as to the fact or amount of damages. Because CATC failed to meet its burden of proof, a new trial is warranted for this reason as well.

### a. *Fact of Damages*

 The Court finds that CATC did not present sufficient evidence at trial to support the verdict reached as to trademark damages. CATC did not offer sufficient evidence of Catalyst's use of the CATC design as a source identifying "trademark" in support of trademark damages. Instead, all of the evidence and theory proffered as to CATC damages supported CATC's trade dress and copyright claims—that CATC was damaged by Catalyst's use of a data design "in" or "as part of" Catalyst's protocol analyzer.

CATC's damage expert Jeffrey Leitzinger never mentioned CATC's trademark infringement claim or stated that any damages he calculated arose from the trademark claim. Dr. Leitzinger's testimony on damages related to Catalyst's use

infringed the Strauss trademark and unfairly competed by using a folded ribbon "pocket tab" sewn with its ends captured in seam of the rear patch pocket of its jeans. The Court reasoned that the tab acquired secondary meaning and use by the defendant of a similar mark is likely to cause confusion. The Court enjoined the defendant from "distributing, selling, offering for sale, or advertising pants bearing a folded cloth ribbon protruding from the seam of the right rear or hip patch pocket of pants." *Levi Strauss, Co.*, 632 F.2d at 820.

In *Brookfield,* the Ninth Circuit reversed the lower court's denial of a preliminary injunction and remanded the case to the district court to enter a preliminary injunction in favor of the plaintiff. *Brookfield,* 174 F.3d 1036. The plaintiff had a trademark in the name "MovieBuff." Defendant was using the mark "moviebuff" in the domain name of its

web site and on the web site's metatags. The Court reasoned that when a company uses a competitor's trademark in the domain name of its web site or in the metatags of the web site, users are likely to be confused as to its source or sponsorship. *Id.* at 1066.

In *Dr. Seuss*, the Ninth Circuit found that a "poetic account of the O.J. Simpson double murder trial" entitled. The Cat NOT in the Hat! A Parody by Dr. Juice, presented a sufficient showing of copyright and trademark infringement of the well-known The Cat in the Hat by Dr. Seuss, to warrant preliminary injunctive relief. *Dr. Seuss*, 109 F.3d at 1406. It then affirmed the district court's order that enjoined defendants "from directly or indirectly printing, publishing, delivering, distributing, selling, transferring, advertising or marketing the book The Cat NOT in the Hat! A Parody by Dr. Juice." *Id.*

of its data display design in its SBAE–20 product. Dr. Leitzinger testified that: (1) CATC and Catalyst were direct competitors (T.Tr. at 789:8–16; 1005:13–15; Exh. 423); (2) that the parties enjoyed a virtual duopoly with inelastic demand and so any sale to Catalyst was a lost sale to CATC (T.Tr. at 791:12–792:16; 795:8–796:19); and (3) when the Catalyst SBAE–20 was released, the main difference between the unsuccessful SBAE–10 and the SBAE–20, which sold ten times as well, was the data display in the SBAE–20 (T.Tr. at 524:23–25; 526:13–15; 1098:14–1009:15; Exhs. 191, 192). Dr. Leitzinger's proffered measure of damages was that Catalyst's use of its data display GUI as part of its SBAE–20 product caused CATC to lose sales.[7] This testimony, however, is not evidence of trademark damage.

Similarly, the CATC executives who testified, Dan Wilnai and Joseph Mendolia, never said anything about CATC being damaged by Catalyst's use of its design in its marketing materials.

Mendolia did testify regarding CATC's marketing efforts and Catalyst's entry into the marketplace. Mendolia also discussed how the sale of CATC's protocol analyzers has declined since early 2001. However, he never testified that Catalyst's use of a picture of its data display design in its marketing efforts damaged CATC, or discussed any damages as a result of alleged confusion. In addition, Mendolia never established that the decline in sales was the result of any trademark infringement by Catalyst.

Similarly, CATC's former Chief Financial Officer, Dennis Evans, never stated any loss in sales by CATC to Catalyst was the result of trademark infringement by Catalyst. Most of CATC's case attempted

to show the lost sales were due to the incorporation of the copycat design in its SBAE–20 product; but, as Catalyst argues, the use of the display as a functional tool was deemed lawful by the jury.

The only evidence arguably relating to Catalyst's use of its data display designs, other than in the product, was five product specification sheets entered as exhibits, and the testimony concerning these exhibits. However, as Catalyst argues, there was no evidence about how the exhibits were used in the marketplace or whether they created any likelihood of confusion or harm.

CATC argues there is sufficient evidence to sustain the damage award because it proved Catalyst's infringement was willful and that a likelihood of confusion exists, though confusion is presumed when infringement is willful. *AMF, Inc. v. Sleekcraft* Boats, 599 F.2d 341, 354 (9th Cir.1979). It relies on *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946), an antitrust case, for the idea that the jury can infer damages from proof of decline of sales and willfulness. It then argues that the fact of damages was proven by the evidence showing Catalyst was a minor competitor in the USB market until it used a copycat mark, when its sales jumped. Once the existence of damages is proven, it argues the Court should not deny recovery due to the uncertainty in the amount, citing to *Bigelow*, the antitrust case.

■ The Court disagrees with CATC's argument. First, the Court does not find that the jury can infer trademark damages based solely on evidence of a decline in sales or willfulness. The Court rejects CATC's argument that the Ninth Circuit

---

**7.** In addition, Dr. Leitzinger testified on calculating a reasonable royalty. Everett Harry, CATC's other damage expert, also testified about calculating a reasonable royalty. However, as discussed below, the jury did not calculate damages based on a reasonable royalty rate.

followed *Bigelow* in a trademark case for the proposition argued for. The Ninth Circuit only followed the decision in the context of a trademark case for the proposition that prospective costs may be difficult to determine precisely and present a danger of overcompensation if they exceed the value of the mark. In this context, "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer...and overcompensation can be avoided by appropriate limitation in the instructions." *Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 989 (9th Cir.1995). Thus, CATC must prove the fact of damages due to trademark infringement. It failed to do so.

In sum, the Court finds that CATC did not offer sufficient proof of any harm from Catalyst's use of a picture of its design on its advertising materials; all of the harm allegedly suffered was due to Catalyst's use of an allegedly infringing design in its products. However, the trade dress and copyright damage analyses presented to the jury are inapplicable to the CATC's logo-based trademark infringement claim. Thus, a new trial is warranted because CATC did not sufficiently prove the fact of trademark damages.

### b. *Proof of Amount of Damages*

▬ The Court finds that CATC failed to prove the amount of damages due to trademark infringement with any reasonable certainty. Trademark remedies are guided by tort law principles and so a reasonable basis for computation must exist. *See e.g., Lindy Pen*, 982 F.2d at 1407–08(affirming district court's judgment of zero damages because plaintiff failed to present competent evidence of its lost profits or defendant's unjust enrichment). Moreover, the law requires plaintiffs to distinguish between damages caused by lawful and unlawful conduct. *See id.* at 1408 (damages set forth were speculative because plaintiff did not establish its lost profits or defendant's unjust gain from infringing activity with reasonable certainty). Here, CATC did not distinguish between damages caused by trademark infringement, as opposed to Catalyst's lawful use of the design as a trade dress or copyright. In fact, CATC did not prove with reasonable certainty any amount of damages resulting from trademark infringement.

In this case, the jury awarded actual damages in the amount of $612,000. It also awarded lost profits in the amount of $1,200,000. CATC argues it proved both actual damages and lost profits. As to actual damages, CATC points to the testimony of Dr. Leitzinger and Everett Harry regarding reasonable royalty. CATC argues that the jury might have used the testimony on reasonable royalty to come up with a licensing fee. Then, CATC argues, they might have used this licensing fee to compute the amount of damage CATC suffered during the pre-sales time-period of May 2000 through March 2001. CATC points to no evidence other than the testimony on reasonable royalty in support of this argument.

The Court finds CATC's argument based on reasonable royalty to be unreasonable. Based on the verdict forms, the jury did not calculate actual damages based on reasonable royalty. The special verdict applicable to actual damages appears as the following: "9. We, the Jury, find that CATC has proved by a preponderance of the evidence that the infringing conduct or unlawful competition of Catalyst has caused CATC to suffer: (a) Actual damages in the amount of $_____.—OR—(b) Actual damages measured by a reasonable royalty rate in the amount of $_____." The jury wrote the $612,000 figure in sub-section (a) and did not write anything in sub-section (b).

Moreover, any calculation by the jury of the number of sales or amount of goodwill lost during the pre-sales time period would be purely speculative. There was no evidence on the number of "lost sales" caused by trademark infringement available to multiply by any "licensing fee" found by the jury. Thus, CATC did not offer sufficient evidence at trial to support the actual damages award.

CATC also argues the evidence supports the $1.2 million award of lost profits. CATC only had the burden of proving lost revenue; the burden was on Catalyst to prove costs and sales based on alternative reasons which would reduce that amount. *15 U.S.C. § 117(a).* CATC argues it presented evidence that the estimated sales of the infringing product were $1.7 million. Catalyst's expert admitted this estimate was accurate. It also argues that the jury's deduction for Catalyst's expenses and for the amount of sales of the SBAE–20 caused by factors other than the design display of the GUI was reasonable. CATC argues that the jury's estimate of cost of goods sold of $250,000 results in a finding of an 85% profit margin, which is comparable to CATC's profit margin and testimony at trial. It also argues that the finding that $250,000 were due to other factors was within the range suggested by Catalyst's evidence of sales of the SBAE–10.

The issue is not whether the jury's deduction of $500,000 was reasonable but whether or not sufficient evidence was offered to show any amount of lost profit suffered by CATC was due to trademark infringement. As previously discussed, CATC has not offered sufficient evidence of any damage due to trademark infringement, as opposed to damage based on the trade dress or copyright claim.

Thus, in sum, the Court finds that CATC did not offer sufficient evidence as to the fact or amount of damages resulting from trademark infringement.

## B. Renewed Judgment as a Matter of Law for the Trademark Claim

As discussed, the Court finds that the result of the trial required a finding of a miscarriage of justice, and so a new trial is warranted. Accordingly, the Court will not determine whether it should grant Catalyst's renewed JMOL on the trademark claim.

## C. Willfulness Verdict

Catalyst argues that there was insufficient evidence of willful infringement of CATC's trademark and that the jury finding was a miscarriage of justice. Accordingly, it argues that this Court should grant its motion for a new trial, or in the alternative, renewed motion for judgment as a matter of law, for the willfulness finding.

The Court finds that a new trial on the issue of willfulness is appropriate. The jury was instructed that "[a]n infringement is willful when the defendant Catalyst engaged in acts that infringes the CATC design trademark, trade dress or copyright and knew that those actions may infringe the trademark, trade dress or copyright." Jury Instruction, page 34. The jury finding on willfulness was therefore based on the finding of trademark infringement. As a result, because the Court finds a new trial necessary for the trademark infringement claim, there must also be a new trial on the issue of willfulness. The willfulness claim cannot stand alone.

## D. Federal Unfair Competition Claims

Catalyst argues the federal unfair competition verdict is not supported by the law and a miscarriage of justice. Accordingly, it argues that this Court should grant its motion for a new trial, or in the alternative, renewed motion for judgment as a

**1078**

matter of law for the federal unfair competition claim.

The Court grants Catalyst's motion for a new trial on the federal unfair competition claim. The federal unfair competition claim is necessarily based on the trademark verdict. Therefore, the federal unfair competition claim is defective for the same reasons as the trademark verdict.

### E. State Unfair Competition Claim

Catalyst argues the jury verdict on CATC's state unfair competition claim is also flawed. Accordingly, it argues that this Court should grant its motion for a new trial, or in the alternative, renewed motion for judgment as a matter of law for the state unfair competition claim.

The Court grants Catalyst's motion for a new trial on the state unfair competition claim. Because the trial verdicts on the intellectual property claims are found to result in a miscarriage of justice, the Court is convinced that allowing the state unfair competition (Cal. Bus. & Prof.Code § 17200) verdict to stand would also work a miscarriage of justice. In this regard, the Court finds it questionable, even giving the broadest possible reading to § 17200, that CATC offered sufficient evidence to uphold the jury verdict on any ground other than those necessarily resolved in the Court's decision as to trademark, trade dress and copyright.

### F. Trade Dress and Copyright Claim

■ CATC argues that if the Court does grant a new trial, it should be for all the claims and not just the trademark, wilfulness and unfair competition claims. The Court agrees with CATC. The trademark, willfulness and unfair competition claims are not "so distinct and separable from others that a trial of it alone may be had without injustice." *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir.1995). Thus, a new trial for the trade dress and copyright claims are appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court grants Catalyst's motion for a new trial for the trademark, willfulness and federal and state unfair competition claims. In addition, the Court Orders a new trial on the trade dress and copyright claims. The trademark verdict is not distinct and separable from the other verdicts and so it is not possible to preserve the other verdicts without a miscarriage of justice. The only reasonable and proper resolution is to grant a new trial on all of the claims.

IT IS SO ORDERED